# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TEXARKANA DIVISION

| | |
|---|---|
| STEVEN GORDON, § | |
| § | |
| Plaintiff, § | CIVIL ACTION NO. 5:17-CV-00194-RWS |
| § | |
| v. § | |
| § | |
| MAJOR GARTH PARKER, SR WARDEN § | |
| AT TELFORD; FNU MCPETE, § | |
| MEDICAL DIRECTOR AT TELFORD § | |
| UNIT; AND FNU MARTIN, MEDICAL § | |
| DOCTOR AT TELFORD UNIT; § | |
| § | |
| Defendants. § | |

## MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMNEDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Steven Gordon, an inmate of the Texas Department of Criminal Justice, Correctional Institutions Division proceeding pro se, filed this lawsuit under 42 U.S.C. §1983 complaining of alleged deprivations of his constitutional rights. This Court referred the matter to the United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges.

This Order concerns the five motions for injunctive relief filed by Plaintiff (Docket Nos. 7, 11, 23, 33 and 36), the first three of which were the subject of a Report and Recommendation (the "Report") issued by the Magistrate Judge (Docket No. 25). For the following reasons, the Court **ADOPTS** the Report and Recommendation of the United States Magistrate Judge (Docket No. 25), in which the Magistrate Judge recommends denying the first three motions for injunctive relief. The Court also addresses the fourth and fifth motions for injunctive relief, which are not addressed by the Magistrate Judge's Report, in this order.

**I. The First Three Motions for Injunctive Relief**

Plaintiff filed motions for injunctive relief on December 1, 2017 (Docket No. 7), March 1, 2018 (Docket No. 11), and April 6, 2018 (Docket No. 23). Plaintiff asserts that prison officials refused to provide Plaintiff with meals in accordance with doctor's orders and the medical staff refuses to provide him with a high blood pressure medication called Verapamil or a cane. He explains that he is supposed to receive meals which are peanut butter free, egg free, and mechanically ground up, but because prison officials will not provide him with ground up meals, he is forced to purchase noodles at the commissary. Plaintiff complains that when the medical staff found out about his lawsuit, they removed his meal restrictions in an attempt to cover up the fact he was not receiving meals in accordance with the doctor's orders. He passed out on March 26 and March 28 due to lack of food. A physician's assistant named Moreland thereafter ordered that Plaintiff's food be mechanically ground up, but Plaintiff has been told only inmates in hospice are allowed to receive mechanically soft diets.

The Defendants filed a response asserting Plaintiff has not exhausted his administrative remedies and has thus failed to show a likelihood of success on the merits of his claims. The Defendants furnished medical records showing Plaintiff was not compliant with medical orders and frequently left the hospital against medical advice. He has been prescribed a blood pressure medication called Furosemide, but his compliance in taking it is poor.

According to the Defendants, these records also showed Plaintiff's cane was confiscated due to a threat against another medical provider and he has been noted on several occasions to walk steadily with a fast pace. He had an order for a mechanically blended diet in February of 2017 but a note from Nurse Practitioner Jammie Barker dated in December of 2017 indicated there was no record of such a diet. She further stated Plaintiff talked easily and swallowed easily while talking.

## II. The Report of the Magistrate Judge and the Plaintiff's Objections

After review of the pleadings, the Magistrate Judge issued a Report recommending Plaintiff's first three motions for injunctive relief be denied. The Magistrate Judge determined Plaintiff had not shown a likelihood of success on the merits of his claim because of his failure to exhaust administrative remedies. The Magistrate Judge also concluded Plaintiff did not show a substantial danger of irreparable harm given his history of acting contrary to medical advice, the fact his cane had been confiscated due to a threat and he had been seen walking steadily with a fast pace, the fact he was talking and swallowing easily when seen by Physician's Assistant Barker, and the fact he was on blood pressure medication, albeit not the particular type of medication he wanted.

In addition, the Magistrate Judge stated Plaintiff failed to show his requested relief would not disserve the public interest because considerations of federalism weigh heavily against interference by federal courts through the issuance of preliminary injunctions against state agencies and Plaintiff's requested injunctive relief in effect asked the Court to order medical personnel to tailor the care they deemed appropriate to fit Plaintiff's beliefs concerning his medical condition.

## III. Plaintiff's Objections to the Report

In his objections to the Report, Plaintiff states his understanding of the exhaustion requirement was that "he was required to file the complaint upon the exhaustion of a final grievance giving prison officials one last chance to respond." Docket No. 30 ¶ 2. He contends his misunderstanding of the requirement should not be grounds for dismissal because his pleadings should be liberally construed. *Id*.

Plaintiff asserts he has submitted multiple complaints as well as Step One and Step Two grievances complaining of the denial of soft diets and the refusal of medication to treat his blood pressure. *Id*. ¶ 3. He states that a few of his grievances were attached by the Defendants to their

response and contends there are no further grievance steps he can take in order to get relief because "formal grievances are dismissed as frivolous or outright ignored without even receiving a response, and informal complaints are simply ignored." *Id*. According to Plaintiff, the fact he has already filed multiple informal complaints and formal grievances satisfies the requirement of likely success on the merits. *Id*. ¶ 4.

With regard to the issue of a substantial danger of irreparable harm, Plaintiff states he has requested copies of his medical records multiple times but has been denied. *Id*. ¶ 5(a). He claims he became extremely ill after a murder attempt using a substance his wife brought back from Borneo. *Id*. ¶ 5(b). This murder attempt caused his body to deteriorate, losing 120 to 160 pounds in five months and leaving him bedridden and unable to eat anything other than Gerber's baby food. *Id*. As a result of this illness, Plaintiff states he suffered heart problems, atrophy in both legs, and continuous pain, causing him to walk with a limp. *Id*.

Plaintiff states he has had numerous tests done on his heart, stomach, and esophagus, many of which were quite painful. *Id*. ¶ 5(c). In response to Defendants' contention that Plaintiff refused an electrophysiology test of his heart, Plaintiff states that this test is very painful and invasive, as this test involves a probe of the heart through the artery and is inserted in the groin. *Id*. ¶ 5(d). Plaintiff claims that he was informed that no anesthesia would be given for this test. *Id*. Plaintiff also argues that he left the hospital against medical advice because he was held in full restraints that severely cut into his wrists causing pain and scarring. *Id*.

After denying his collapses are the result of manipulation of medication, Plaintiff states he suffers from gastroparesis, which he describes as "essentially a paralyzed stomach."[1] *Id*. ¶ 5(e). He

---

[1] The medical records attached to the Defendants' response to the motion for injunctive relief contain no mention of a diagnosis for gastroparesis. On December 21, 2017, a notation reflects a diagnosis for gastro-esophageal reflux disease, which is different from gastroparesis, but Nurse Practitioner Barker stated no records showed esophageal

had been under the care of specialists outside of prison, but the prison medical personnel told him the medications he had been taking, Protonics and Reglan, were not available. *Id.* ¶ 5(f). Instead, he received a variation of Prilosec, which Plaintiff states is used to treat heartburn and does nothing for gastroparesis. *Id.*

Plaintiff also points out that one of the Defendants' exhibits showed he was supposed to receive a mechanically soft diet, but he has never received one. *Id.* ¶ 5(g). He again states this restriction was removed after he filed the lawsuit. *Id.* Plaintiff recounts his passing out on March 26 and March 28, 2018, and states after the March 28 incident, he was taken to the infirmary and examined by Physician's Assistant Moreland. *Id.* ¶ 5(i). She ordered Reglan and a mechanically soft diet, but he still did not receive such a diet because he had been told that only inmates in hospice can receive mechanically soft meals. *Id.*

Next, Plaintiff states he was prescribed Furosemide [known by the brand name of Lasix], which he describes as a "water pill," to treat occasional swelling of his feet and legs. *Id.* ¶ 5(j). Plaintiff argues that the fact that he was prescribed Verapamil and Furosemide at the same time supports his claim that Furosemide is not a high blood pressure medication. *Id.* In any event, Plaintiff states even if the Furosemide is used to treat high blood pressure, it is ineffective because his blood pressure is still high. *Id.* Because the American Heart Association refers to high blood pressure as a "silent killer," Plaintiff states he has shown the substantial risk of harm required for a grant of injunctive relief. *Id.* ¶ 5(k).

Plaintiff denies he has ever used a cane in a threatening manner, stating he was physically assaulted by a nurse named Shoemaker at the Stiles Unit. *Id.* ¶ (8). He also claims he was denied insulin at the Stiles Unit, but acknowledges he received his insulin at the Telford Unit. *Id.*

---

swelling and Plaintiff talked and swallowed easily (Docket No. 18-1 at 29).

**IV.     The Defendants' Response to the Objections**

The Defendants filed a response arguing Plaintiff did submit Step One grievances concerning his peanut butter allergy and his desire for ground-up food in March and April of 2017, but that Step One grievances do not satisfy the exhaustion requirement and thus do not contradict Plaintiff's sworn assertion he had not exhausted all of the steps of the grievance procedure. The Defendants also contend Plaintiff's recounting of conversations with medical professionals constitute new evidence not properly before the Court and are hearsay in any event. They further state Plaintiff's assertions show he is receiving medical care and thus controvert his claims of deliberate indifference. Finally, the Defendants state Plaintiff did not object to the Magistrate Judge's conclusion that Plaintiff failed to show his requested injunctive relief did not disserve the public interest.

**V.     Plaintiff's Fourth Motion for Injunctive Relief**

After the Magistrate Judge entered her Report, Plaintiff filed a fourth motion for injunctive relief (Docket No. 33) and a supplemental emergency motion for injunctive relief (Docket No. 36). In the fourth motion, Plaintiff states he requested a refill of ibuprofen on July 1, 2018 and was referred to a provider on July 2. On July 6, he went to see Nurse Practitioner Jammie Barker. According to Plaintiff, Nurse Practitioner Barker told him he was not to receive any further medication, including insulin or a referral to the dental department, until he dismissed his lawsuit. He asks for an order directing his medications be restored and he receive his dental referral, and the Defendants be directed to cease all acts of retaliation against him. He also seeks to add Nurse Practitioner Barker to the lawsuit as a defendant. Only July 7, 2018, Plaintiff filed Step 1 Grievance form, which is attached to his motion. Docket No. 33-1.

In his supplemental emergency motion (Docket No. 36) filed on July 20, 2018, Plaintiff

attached a copy of the Step 2 Grievance he filed in response to July 7, 2018 Step 1 Grievance. Plaintiff states that he has been without insulin to treat his diabetes for nearly two weeks. He further states that even though a doctor prescribed a very low dosage of medication to treat high blood pressure, this medication has now been confiscated. Plaintiff alleges that he is being denied medication and left to suffer physical pain in retaliation for this civil suit.

**VI. Discussion of the Magistrate Judge's Report, the Objections and the Fourth and Fifth motions for injunctive relief**

Although Plaintiff attached a copy of his Step 2 Grievance to his supplemental motion, this is not sufficient to overcome his initial failure to exhaust administrative remedies before filing this suit. *See Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012) (exhaustion of administrative remedies prior to filing the lawsuit is mandatory and it is irrelevant whether exhaustion is achieved during the federal proceeding); *Dillon v. Rogers,* 596 F.3d 260, 268 (5th Cir. 2010) (substantial compliance with administrative remedy procedures does not satisfy exhaustion; instead prisoners are required to exhaust administrative remedies properly); *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004) (a grievance must be pursued through all available steps of the process to be considered exhaustive). Requests for injunctive relief are not exempt from the exhaustion requirement, and failure to completely exhaust prior to filing suit cannot be excused. *McMillan v. Director, TDCJ-CID*, 540 F.App'x 358, 359 (5th Cir. 2013) (citing *Gonzalez v. Seal*, 702 F. 3d 785, 788). That Plaintiff's motions are filed as emergencies also does not excuse compliance with administrative remedies.

The Magistrate Judge correctly determined Plaintiff did not overcome his burden of showing a substantial likelihood of success because he did not exhaust his administrative remedies.

Moreover, though Plaintiff raises concerns regarding the quality and efficacy of the

medical care he has been receiving, this is not enough to allege deliberate indifference to his serious medical needs. *Norton v. Dimazana*, 122 F.3d 286, 293 (5th Cir. 1997). Plaintiff concedes he has refused tests, as painful as he may allege they are, and has left medical facilities against medical advice. He has been prescribed medications but believes he should receive different ones. The Magistrate Judge correctly observed that the Court cannot order medical personnel to accept Plaintiff's perceived diagnoses, nor can the Court second-guess medical judgments made by physicians and other medical professionals. *Zuniga v. University Health System*, 71 F.App'x 293, 2003 U.S. App. LEXIS 21354, 2003 WL 21659265 (5th Cir., July 9, 2003); *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1986); *Parham v. Johnson*, 126 F.3d 454, 458 (3rd Cir. 1997). Plaintiff is not entitled to injunctive relief in this regard and his objections are overruled.

Nor has Plaintiff shown a substantial risk of irreparable harm if the requested injunctive relief is not granted. Though Plaintiff may suffer from high blood pressure, this itself does not show that he faces a substantial risk of irreparable harm if the Court does not order he receive the medication which he believes appropriate. *See Cushenberry v. LeBlanc*, Civil Action No. 17-0402, 2018 U.S. Dist. LEXIS 4474, 2018 WL 357868 (M.D. La., Jan. 10, 2018) (rejecting request for injunctive relief based on claim the prisoner had not been provided with appropriate relief for high blood pressure, noting the prisoner had refused to accept additional medical treatment offered). Plaintiff's objections are overruled.

Lastly, Plaintiff has not exhausted his administrative remedies regarding Nurse Practitioner Barker's alleged actions prior to filing his fourth motion for injunctive relief. These alleged actions occurred just two days before Plaintiff signed his motion, and he includes a copy of a Step One grievance he filed on July 7, the day after the alleged incident occurred. Because Plaintiff's request for injunctive relief is not exempt from the exhaustion requirement, his fourth motion for injunctive

relief, including his request to add Nurse Practitioner Baker to the lawsuit, must be denied as well.

### VII. Conclusion

The Court has conducted a careful *de novo* review of those portions of the Magistrate Judge's proposed findings and recommendations to which the Plaintiff objected. *See* 28 U.S.C. §636(b)(1) (District Judge shall "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). Upon such *de novo* review, the Court has determined the Report of the Magistrate Judge is correct and overrules Plaintiff's objections. The Court also finds that Plaintiff's fourth and fifth motions for injunctive relief suffer from the same fatal flaws as his first three motions, and should be denied. It is accordingly

**ORDERED** the Plaintiff's objections are **OVERRULED** and the Report and Recommendation of the Magistrate Judge (Docket No. 25) is **ADOPTED** in its entirety as the opinion of this Court. It is further

**ORDERED** that Plaintiff's motions for injunctive relief (Docket Nos. 7, 11, 23, 33 and 36) are **DENIED**. Finally, it is

**ORDERED** the Plaintiff's request to add Nurse Practitioner Jammie Barker to the lawsuit as a Defendant, contained within Docket No. 33, is **DENIED** because the claims which Plaintiff wishes to add are unexhausted, rendering an amendment futile. The denial of the request to add Nurse Practitioner Barker is without prejudice to Plaintiff's right to file a separate lawsuit raising the incidents of July 2018 at such time as his administrative remedies on these claims have been exhausted.

**SIGNED this 4th day of September, 2018.**

ROBERT W. SCHROEDER III
           UNITED STATES DISTRICT JUDGE